May it please the court, your honors. My name is Gregory Hessler. I have the pleasure of representing Ms. Roxanne Cline in this action, the appellant. Ms. Cline's appeal concerns the appropriate disposition of the proceeds of two employee benefit plans held by her husband, Raymond Cline, at the time of his death. The first is a 401k pension plan and the second is a group universal life insurance policy. Mr. Cline passed away on December 15, 2004, at which point both the proceeds of the 401k and the pension plan and the life insurance became payable. Ms. Valentine, Mr. Cline's former spouse, and Ms. Cline filed competing claims to the policies. Ultimately, both matters were brought to the district court and the district court concluded both issues in favor of Ms. Valentine, Mr. Cline's former spouse. The court concluded that Ms. Valentine was entitled to the life insurance proceeds on the basis of Mr. Cline's beneficiary designation and that the imposition of a state law constructive trust was appropriate with respect to the pension plan because the proceeds had been dispersed. Ms. Cline appeals both of these decisions to this court and it raises three issues for decision. The first is whether or not ERISA preempts a state law constructive trust where that trust is utilized to evade ERISA's other requirements, specifically the quadro qualified benefit. Since CARMONA came down between the time of the district court decision and now, it kind of affects the district court's view on the constructive trust issue. I agree. The district court did not have the benefit of the CARMONA decision. I do think CARMONA is dispositive of this issue and controlling in this case. I think that if I know what's going on in our court, that a final disposition has not been reached and that there's some petitions for rehearing. So I suppose until that happens, it's not completely dispositive. I wasn't aware of that, Your Honor. It's probably going to be the result, but you should know that. And I think it's the right result, particularly when you look at the Supreme Court history in terms of dealing with this type of issue, as well as the other circuit's efforts to grapple with the issue of how far does an ERISA preemption go into state law. And you really have to draw a distinction between two different scenarios. One is where you have a judgment creditor who is seeking to enforce a judgment against a debtor, and the debtor uses ERISA as a shield, saying you can't attach, you can't garnish the funds in my bank account because those once originated from an ERISA-based benefit. But I thought, aren't the facts in this case that there was a divorce decree which awarded 50 percent to Ms. Valentine and it was only because Mr. Carmona didn't carry forward on that mandate that the – and that's what the judge, district court judge, was influenced by. So it isn't as if there's any scheming here. It was a part of a divorce decree. They just didn't – they didn't enforce it through a quadro, so. They didn't take the necessary steps to meet Federal law. And that is exactly – you're exactly right, Your Honor. That's the second type of scenario. And where the confusion comes up is where courts have attempted to take – to deal – to take the rationale behind allowing a judgment creditor to enforce a judgment against funds that once originated from an ERISA account and then transpose that into the situation we have here, which is really an attempt where the claim that is being made is indistinguishable, whether it's pre-disbursement or post-disbursement. Ms. Valentine's claim is that she had an interest in the undisbursed proceeds of the plan, that the divorce decree granted her that right. And undisputedly, under Federal law, her failure to qualify that domestic relations order as a quadro eliminated her ability to enforce the terms of the divorce decree under Federal law. So what does she do? She waits until the funds have been dispersed and then attempts to enforce the same right against the same proceeds, arguing that the results should be different merely because the proceeds have now been distributed. And that raises the real undermining effect in the issue that Carmona decided, and I think that the Supreme Court addressed in a similar fashion in the Boggs v. Boggs decision. Well, you better take a look at the more recent Supreme Court opinion of Kennedy versus the DuPont savings because there's an interesting footnote 10 where they cite both the Boggs case, but they also say they cite contrary cases. And they say, despite our following answer to the question here, our conclusion that 1056-D1 does not make a nullity of a waiver leaves open any questions about a waiver's effect in circumstances in which it is consistent with planned documents. Then it goes on to say, nor do we express any view as to whether the estate could have brought an action in state or Federal court against Liv to obtain the benefits after they were distributed. It cites both an Oklahoma case and a Federal case which distinguishes Boggs and holds that ERISA did not preempt enforcement of an allocation of ERISA benefits in state court divorce decree as, quote, the pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed. But they don't decide the issue. No, they don't. I'm just saying, before you cite the Boggs, you also ought to add into your analysis, as we would have to, as part of that all is. Let me address it this way. Ultimately, this Court's required to engage in a traditional conflicts analysis in addressing the preemption issue. And the question is, when you address this conflict analysis, you look both at the object of the statute, the ERISA statute, which is to protect planned participants and beneficiaries. And you look at the effect that state law will have on ERISA plans. And in this case, we submit that the effect is clear, that if you allow a non-designated beneficiary, such as Ms. Valentine, to simply wait until the proceeds are dispersed and then use that same decree that didn't qualify under Federal law to gain the same proceeds under state law, well, the problem is, then, what meaning does Federal law have in that circumstance? Why comply with a quadruple? Well, wait a minute. It was her husband who was the one that failed to follow through on the designation properly as was dictated by the divorce decree. She, on her side of the thing, apparently failed to take the steps, or her lawyer did, to perfect it under the ERISA. Correct. But it's not as if she was lying in the weeds. When was she supposed to have taken the action to perfect the interest? Well, any time in this specific case, any time between 2002 when the decree was entered and 2004. In fact, the record reflects there were some disputes over whether Mr. Klein was in complying with the terms of the decree in state court. So she was aware that there was an issue there and had opportunity to meet Federal quadro requirements. But I don't mean to suggest that Ms. Valentine is merely waiting in the weeds. What I'm suggesting is that by allowing her, in this instance, to end-run ERISA's quadro requirements, you set a dangerous precedent for future beneficiaries or non-beneficiaries, former spouses or other aggrieved parties, to take that same approach under less, perhaps, innocent means. Why not wait if you are concerned with either the cost of meeting Federal quadro requirements or the complexity of it? Well, the district court here, as I understand it, didn't try to declare a blanket rule. He analyzed it under the concept of unjust enrichment, didn't he? So you've made it fact-specific. Well, and that raises the second issue in this appeal, which is whether or not the imposition, if you set aside preemption, is the imposition of a constructive trust appropriate. And this becomes somewhat circular because it is difficult to determine or for what we submit is that it's difficult for this Court or the district court to conclude that Ms. Klein has been unjustly enriched when she is the proper, undisputed legal beneficiary of the proceeds under Federal law. So that's the first problem with unjust enrichment. The second problem, there are several problems. The second problem is that the district court retroactively valued that back to a time prior to when Ms. Klein came into possession of the funds, which really is reflective of what the court was, the district court attempting to end-run ERISA's quadro requirements. Ms. Klein can't be responsible under a constructive trust until she actually comes into possession of the funds. But what the court did here is retroactively value that back to 2002, essentially giving the divorce decree through State law the elevated status of a quadro without ever complying with Federal law. The third problem with the district court's conclusion as far as constructive trust is concerned is that Ms. Ballantyne and the district court we submit failed to establish by clear convincing and cogent evidence that Ms. Ballantyne had no other legal remedy. As Your Honor has already pointed out, Ms. Ballantyne did have legal representation in connection with the divorce. In fact, the divorce decree itself is signed by an attorney on her behalf. So she has a remedy if she feels that he has committed malpractice by failing to qualify that as a quadro. She has that avenue of recovery. She also has an avenue of recovery against the estate of Mr. Klein, because ultimately what we're talking about here are the actions and inactions of Raymond Klein, not Roxanne Klein, his spouse. She has a remedy either in the form of the malpractice action or against the estate. And the fact that she has those alternative remedies precludes the imposition of a constructive trust under Washington State law. I see I only have a few minutes left, so let me address briefly the last issue raised by the appeal, which is the life insurance policy. And in a lot of ways, this is a more straightforward issue. We don't have to worry about quadro requirements or ERISA. All we're dealing with in this instance is what did Mr. Klein mean by his beneficiary designation. Mr. Klein designated Teresa Ballantyne as the beneficiary of his life insurance policy by stating 100 percent of benefits or $432,000. Let me ask you a question on that. Yeah. You're focusing on that language in context. And in context, I would include the employee benefits pamphlets and various explanations at the time. I don't understand your argument, which is that the map of it at the time that he died works out to be adding the $432,000 to $250,000 to $10,000. To close, if you were, your math analysis doesn't take any account of the intervening here. The increase in salaries. So I just don't, I can't follow the argument. I have been convinced of that point by my colleague. I withdraw that point and concede it. Okay. So then what's the fallback? So the question then is, I don't, well, there's two issues here. One is that what that resolves is whether or not the policy grows over time. It doesn't resolve the question of whether or not the beneficiary designation is capable of multiple determinations. And ultimately, there is no evidence in the record that tells us what Mr. Klein intended when he made that designation. In fact, what little evidence we have runs contrary to what the district court concluded, which is that he meant the or $432,000 merely as a reference to the value of the policy at that time. Let me direct you to the supplemental excerpts, page 13. In 2004, after the divorce, prior to Mr. Klein's death, Ms. Valentine instituted contempt proceedings against Mr. Klein on the grounds that he had failed to abide by, among other things, the requirement of the divorce decree that he maintain life insurance. What Mr. Klein said, and at that time, the policy, the MetLife policy, was over $500,000. So if their interpretation is correct, that he intended only 100 percent of benefits, he was not in contempt. But what Mr. Klein does is he responds to the court and says, I never understood why I had to maintain life insurance, and I haven't done it. Now, why would an individual, if he intended his beneficiary designation to grant Teresa Valentine 100 percent of benefits, admit to a State court that he was in contempt on the grounds that he had never done so? So what little evidence we have suggests is just the opposite, that Mr. Klein understood or intended that the 4432 operate as a ceiling rather than a floor. But ultimately, we don't know what he intended. The problem is, is that it is subject to multiple reasonable interpretations. And as soon as that occurs, if this Court determines that it is subject to alternative interpretations, it is ambiguous as to the extent of that ambiguity. It is ambiguous and invalid to the extent of the ambiguity, in which case you resort to the planned documents. I see that I'm out of time. Thank you, Your Honors. Thank you. James Elliott. Thank you, Your Honors. Good morning. My name is James Elliott on behalf of Ms. Valentine. I first want to focus in on the constructive trust issue. Unless the Court has questions about the life insurance issue, I think the meat of this case really kind of resolves and works around the phone. Well, assuming that it sticks, why isn't Carmona dispositive? Yes, Your Honor. I think the key part about Carmona is the ruling there. The Court basically said this. It cannot have a constructive trust in the proceeds on a pension plan benefit when it cannot achieve it through a quadro. The concern from Carmona, if you'll recall, was that basically the Family Court tried to issue this order after the funds had already been vested. It made an effort to direct the plan to change the name of the beneficiary. That was the focus of the State Court. Unfortunately, it said in the alternative, the constructive trust issue. Reality was that the Court there was trying to change the name of the beneficiary. It was trying to name it as to the plan itself. In fact, it directed the plan to do so. Oh, yes, because you can't transfer or assign. Correct. You can waive, but you can't transfer or assign. I agree with that, Your Honor. So? My response to you is where that Court held that it cannot have a constructive trust in the proceeds or it cannot maintain through a quadro. The difference here is this could have been maintained through a quadro. Yes, but it wasn't. I agree with that, Your Honor. So since it wasn't, it's affecting a transfer or an assignment and, therefore, is undercutting, undermining, sidestepping the quadro requirement, isn't it? I respectfully disagree with Your Honor. Okay. I think something that's really important here is in terms of the anti-alienation, anti-assignment provision, one thing to keep in mind is the United States Supreme Court in Boggs recognized the Treasury regs, 26 CFR 1.401A, and that was also identified by this Court in Wright v. Riveland, Ninth Circuit opinion from 2000 and the Guidry opinion, the Tenth Circuit. In all of those cases, and especially important from Boggs is they recognize the importance of the Treasury regs. The Treasury regs themselves identify the fact that the alienation or assignment provision is against the plan. Now, this Court and Boggs have both recognized that those are the accurate readings of alienation and assignment. What I'm saying here, Your Honor, is that basically the plan itself is not being challenged. The funds have already been distributed to the named beneficiary. So there is nothing against the plan. And that truly was the definition identified by the Treasury regs and identified by Boggs. Now, I'm interested, Judge Fisher. I'm sorry. What's the basis for a constructive trust other than that Valentine should have had the plan proceeds instead of Mrs. Klein? I mean, what's the basis for it? What independent basis, independent of the Quadro ERISA requirements, do you rest on? Well, Your Honor. It's not like she did Mrs. Klein. There's no evidence that Mrs. Klein, independent of all of that, did something snarly. You know? I mean, so you're not saying, you know, she behaved inequitably. Therefore, we get a constructive trust on the proceeds that she properly got. So why isn't it just to bang on the Quadro requirement? Well, I think there are a couple issues. Again, the anti-assignment, anti-alienation provision wouldn't prevent this because it's after the distribution. But in terms of the constructive trust itself. My point is this. I'm sorry. To focus on it. It does. It prevents assignment and alienation. Against the plan. I agree with that. The plan. I agree with that. So what happened? In other words, Mrs. Valentine could not have been reassigned or transferred those benefits. Against the plan. I agree with that. All right. So what is it, independently of that, that Mrs. Klein did to justify imposition of a constructive trust? Well, I think some of the things we need to look at here is not only the divorce decree. We have the intentions of Mr. Klein as identified in SCR 13. Mr. Klein's intentions are not answering my question. I'm sorry, Your Honor. What did Mrs. Klein do to independently invite the imposition of an equitable State remedy of imposing a constructive trust? Did she steal anything? Did she, you know, I mean, what did she do independently? I'm getting to that, Your Honor. I apologize. SCR 16 identifies her attorney had identified the fact that she knew that these funds were supposed to go to my client. And, in fact, she tried to or began to take steps to get them there. So she relies on ERISA. Says, you know, fine. Maybe she was supposed to, but it's not in the quadro. Hey, it's not my problem. I understand that, Your Honor. Under the Washington State law, though, and I think Baker v. Leonard is the case I cited to in my brief, there doesn't necessarily need to be proof of a wrongdoing with regard to an unjust enrichment issue under constructive trust. In the Baker v. Leonard case, I believe it was the appellate court, identified the fact that the intention of the decedent can also allow for that constructive trust issue. We're not concerned here, I don't think, with Washington law. We're concerned with whether Washington law is preempted by the quadro requirements. So whether or not this could have happened under Washington law is sort of a side point. I understand that. You're just saying with regard to the issue of what Ms. Klein did necessarily wrong. And my answer to you is under Washington law, which deals with a constructive trust issue, that doesn't necessarily need to be the case. It's whether Washington law is preempted. And I understand that. And I apologize, Your Honor. And Judge Fischer has identified the Kennedy v. DuPont case. I did not realize that. It must have just come out within the last week or so. But it is good to hear that footnote 10 recognizes with regard to taking the no view on the after distribution. Because I think that clarifies some of the issues that were raised, especially by Mr. Hessler here, with regard to what Boggs was saying. Counsel, Carmona stands because the issue has not been decided by the Supreme Court. So unless Carmona goes in bank or something else, Carmona is the law. Well, I would agree, Your Honor. It may be saying that there's more to follow from the Supreme Court. But that shoe has not dropped. And, again, I would go back to I do not believe that the rule that I'm proposing with regard to distribution after or constructive trust on proceeds after distribution would necessarily be set aside by Carmona's opinion. Because, again, the Carmona opinion, at least in my opinion, left open the issue whether or not constructive trust proceeds can be had where a quadro could have been maintained. And the court there could have made very clear that it would have cut off all the issues. But it laid that out. And, in fact, it said any other rule other than that can be seen as an end around. And, unfortunately, in Carmona, that's essentially what the state court was trying to do was to change the name of the beneficiary as against the plan. So I don't necessarily think that Carmona completely would be dispositive on this issue because of what they left open with regard to whether or not it Again, I think one of the policy reasons it's important, I identified it in my brief, is where we are as a society right now. I think Mr. Hessler makes the argument this is going to swallow up the rule on quadros. And I disagree with that because, again, this is not an issue where if people knew about ERISA and knew about quadros, they would choose to land the weeds. I mean, in reality, if they have the opportunity to go and get themselves a plan as against the plan that would be immediate, that would be guaranteed funds, they're going to do that, definitely. I mean, you ask my client this. She's been fighting this issue for multiple years, spending multiple thousands of dollars. But in our society, the things we have to recognize are as follows. There are more divorces that are occurring, as unfortunate as that is. More people are in their estates having 401ks. This is their gist. People are without as many funds to go and consult lawyers to get these issues dealt with. And one of my favorite comments I've read from this circuit is from Hamilton, where the court pointed out that lawyers are having problems dealing with these quadros, dealing with these issues. And now we're in a situation where we're talking about individuals that are handling these issues on their own. And the problem we're going to run into, Your Honors, is I'm proposing a rule that necessarily supports what ERISA was trying to do. ERISA, through the REA, when it was amended, was trying to provide for the spouse who was at home, who was not able to work. That's the concept, providing the stream of income. And what we had here was a divorce decree that essentially was trying to convey those benefits to my client, and it never got completed. And it wasn't done properly in terms of meeting all the quadro requirements. I admit that. And if it had been, we wouldn't be here. The issue would have been against the plan itself. That would have been the better choice. I don't believe that what I'm proposing is going to swallow up the issue of quadros. In fact, I think it's going to reinforce the fact that people need to have them. But if they don't take the time or don't have the money to go and resolve those issues, what you're going to run into is people handling these issues on their own and getting them wrong. And when they do, that's where we're left. And that's the rule that I'm proposing. It's a narrow one. And it's a fact-specific one, as Judge Fischer pointed out. I think ‑‑ I'm sorry. I lost my train of thought. I apologize, Your Honors. I don't know if the Court has any questions for me with regard to the life insurance issue or not. And I want to leave that open while I see I have a couple minutes. And if not, no questions on life insurance. Okay. With regard to the constructive trust issue, I think this rule makes a lot of sense. And unfortunately, what we're ‑‑ Don't over-argue your case. I apologize, Your Honors. I won't. If you want me to sit down, I shall, Your Honor. I think the Court should look at this and should affirm the lower decision. Thank you. Okay. Anything further? Thank you very much, counsel, for your argument. Both of you that mattered just argued that it will be submitted and the Court will stand as it says for the day. Kennedy filed it away January 26th, so it is very easy. We don't send out 28‑day letters. Thanks.
judges: Fletcher, Rymer, Fisher